UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A.R.,

               Plaintiff,

       v.

SSA COMMISSIONER,

               Defendant.

Case No. 25-cv-10571-NC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS**

Re: ECF 11

Plaintiff A.R. appeals from an Administrative Law Judge's denial of his social security benefits application.  This Court finds the ALJ erred in making her Residual Functional Capacity determination by failing to obtain a supporting medical opinion, discrediting Plaintiff's symptom testimony, and ignoring Plaintiff's non-severe shoulder impairment.  However, the ALJ did not err in finding Plaintiff's shoulder impairments to be non-severe.  Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's motion and remands the case for further proceedings.

## I.    BACKGROUND

On December 20, 2023, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on January 1, 2017.  ECF 10, Administrative Record (AR), 10.  The application was denied initially and upon reconsideration.  *Id.*  The ALJ held a hearing on Plaintiff's claims then issued an unfavorable decision, finding Plaintiff

was not disabled. *Id.* at 22.

The ALJ's decision followed the sequential five-step analysis for disability determinations. *See* 20 C.F.R. § 404.1520. First, the ALJ found Plaintiff had not engaged in substantial gainful activity. AR 13. Second, the ALJ determined Plaintiff had the following severe impairments: depression, anxiety, attention deficit hyperactivity disorder, obesity, sleep apnea, knee disorder and pain, and status post total knee arthroplasty. *Id.* Third, the ALJ concluded that Plaintiff's impairments, or a combination thereof, did not meet or equal the criteria of a listed impairment in the federal regulations. *Id*. at 14–16. The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC) by considering all medical opinions and evidence available and determined he could perform medium work with limitations against climbing ladders, ropes, or scaffolds; working at unprotected heights; operating dangerous, moving machinery; and complex instructions or tasks. *Id.* at 16. Lastly, the ALJ concluded that Plaintiff could work as a store laborer, hand packer, or cleaner II, and that such jobs exist in significant numbers in the national economy. *Id.* at 21.

Plaintiff appealed the ALJ's decision. AR 1. The Appeals Council denied review. *Id.* Having exhausted all administrative remedies, Plaintiff timely filed the Complaint in the present action. ECF 1.

The parties have consented to magistrate judge jurisdiction. ECF 8, 9.

## II.    LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's decision should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance"). Even when the

United States District Court
Northern District of California

ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted).

### III.   THE ALJ ERRED IN HER RFC FINDING

The ALJ determined Plaintiff's RFC capacity to be "medium work" with limitations against climbing ladders, ropes, scaffolds, working at unprotected heights, or having operational control of moving, dangerous machinery. AR 16. As for mental limitations, the ALJ concluded Plaintiff "could carry out detailed, but not complex instructions and tasks." *Id.*

Plaintiff argues the ALJ erred in her RFC finding because (1) no medical opinion supported the provided limitations, and (2) the record required development. ECF 11 at 5–8; 13 at 2–4.

"A claimant's RFC is the most a claimant can do despite [his] limitations and must be based on 'all of the relevant medical and other evidence' in the record, including treatment records, medical opinions, and the claimant's own statements." *Nicole D. v. Bisignano*, No. 24-cv-01451-AJB-SBC, 2025 WL 2710781, at *6 (S.D. Cal. Sept. 23, 2025) (quoting 20 C.F.R. § 404.1545(a)(3)). "Although an ALJ may not render his or her own medical opinion and is not empowered to independently assess clinical findings, the ALJ is responsible for resolving conflicts in the evidence and for translating the record into a function-by-function assessment of what the claimant can do." *Id.* (citing *Stubbs-*

3

*Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)) (internal citation omitted).  The ALJ is also "responsible for translating and incorporating clinical findings into a succinct RFC." *Id.* (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)).  "So long as the RFC reasonably reflects the evidence and the ALJ's interpretation is rational, it must be upheld—even where the evidence could support more than one conclusion." *Id.* (citing *Leonard v. Colvin*, 633 F. App'x 362, 365 (9th Cir. 2015)).

There is no medical opinion which supports the limitations in the ALJ's RFC finding, so the substantial evidence standard is not satisfied.  While "[a] matching medical source opinion of a claimant's RFC is not a prerequisite for an ALJ's RFC finding," there must be sufficient evidence for the ALJ to make her finding.  *De Fletes v. Colvin*, No. C12-00661 HRL, 2013 WL 1345724, at *2 (N.D. Cal. Mar. 31, 2013).  For there to be sufficient evidence, there must be at least *a* medical opinion to support the RFC.  *Gregory J. v. Kijakazi*, No. EDcv21-00514-JEM, 2022 WL 22877302, at *4 (C.D. Cal. Apr. 26, 2022) (collecting cases).  "The ALJ is simply not qualified to interpret raw medical data in functional terms." *Id.*  However, here, the ALJ did just that.

The ALJ evaluated Plaintiff's medical data and concluded that Plaintiff should not climb ladders, ropes, scaffolds, work at unprotected heights, have operational control of moving, dangerous machinery, or carry out complex instructions and tasks.  AR 16.  But Plaintiff's medical records do not support such an RFC finding, nor does the ALJ provide sufficient analysis to support her determination.  *McAnally v. Berryhill*, No. 3:18-cv-02272-GPC-RNB, 2020 WL 1443734, *6 (S.D. Cal. Mar. 25, 2020) ("an ALJ may not act as [her] own medical expert as [s]he is simply not qualified to interpret raw medical data in functional terms . . . Instead, the ALJ should permit an examining physician or medical expert to evaluate the evidence").  In fact, as the ALJ notes, Plaintiff's medical records did not include *any* treating source opinions.  AR 20.  While four state agency consultants reviewed Plaintiff's medical records, each concluded there was insufficient evidence to render an RFC.  AR 397–410.  As such, the ALJ's duty to develop the record was "triggered" because "the record [was] inadequate to allow for proper evaluation of the

4

evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Accordingly, the ALJ erred in her RFC determination.

## IV. THE ALJ FAILED TO CONSIDER PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his mental and physical symptom statements, which she found inconsistent with his medical records and daily activities. ECF 11 at 8. Plaintiff also contends the ALJ did not appropriately consider Plaintiff's lack of housing and mental impairments which hindered his ability to receive care. *Id.* at 12. The Commissioner contends Plaintiff's testimony is inconsistent with his medical records and daily activities.[1] ECF 12 at 5–7.

In evaluating a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: [t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation omitted).

---

[1] The Commissioner also contends Plaintiff's testimony should be discounted because he improved with treatment. ECF 12 at 6. Because the ALJ's analysis does not make this argument, the Court will not consider it. *See* AR 18–19.

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.    The ALJ Improperly Discredited Plaintiff's Disability Onset Testimony**

The ALJ discredited Plaintiff's January 2017 disability onset date because he began treatment in mid-2017.  AR 18–19.  Plaintiff suffers from severe depression and anxiety and has been unhoused for periods of time, including in 2017.  AR 13, 369, 1002, 1015.  Yet, the ALJ failed to consider how such limitations prevented Plaintiff from obtaining care.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *Alex P. v. King*, No. 23-cv-06238-SK, 2025 WL 1753508, at *5 (N.D. Cal. Feb. 19, 2025) (noting that being unhoused is an "obvious barrier to accessing treatment").  Accordingly, the ALJ erred in her determination by discounting Plaintiff's testimony.

**B.    Plaintiff's Mental Symptom Statements Are Consistent with Medical Records**

The ALJ stated Plaintiff's "cognitive findings" were "entirely inconsistent" with the record because Plaintiff's "mental status exams were almost entirely benign," and his mood findings "did not persist."  AR 19.  Not so.  Plaintiff's medical record demonstrates persistent anxiety and depression.  The Court is not persuaded by the Commissioner's citations which take "normal" mental health exam findings out of context.  For example, the Commissioner contends a November 2017 record describes Plaintiff's mood being as "euthymic," but ignores that, during the same visit, Plaintiff reported his medication was ineffective and his situation "worse."  ECF 12 at 5; AR 991–992.  Similarly, the Commissioner cites one sentence in a January 2017 medical record in which Plaintiff reported he has "been doing better."  ECF 12 at 5; AR 989.  Within that same record, however, Plaintiff stated he had "emotional distress" and "plans to follow up in therapy," and the physician's mental status evaluation noted Plaintiff's mood as "anxious and depressed."  AR 989–91.  The Commissioner's other citations are similarly inapposite.  *See* AR 736 (increasing medication dosage due to low energy and concentration issues); 976–978 (Plaintiff's pre-operative psychological evaluation for bariatric surgery noted

6

"normal" mental status though reported anxiety and ongoing therapy); 1609–1610 (objective mental status evaluation marked "normal," yet physician noted Plaintiff's "fairly significant" depression and anxiety and antidepressant trial).

The ALJ's findings on Plaintiff's mental status exams rejected overwhelming evidence that Plaintiff continually struggled with depression and anxiety, as noted by his providers over many years. *See Susana L. v. Kijakazi*, No. 20-cv-05521-DMR, 2022 WL 901546, at *4 (N.D. Cal. Mar. 28, 2022) ("In finding that 'objective observations on [Plaintiff's] mental status evaluation were . . . generally within normal limits,' the ALJ highlighted certain observations but ignored others, including some made by her treating providers over several years of visits, that suggest a more compromised mental status.").

### C.    Plaintiff's Sleep Symptoms are Consistent with the Record

The ALJ discredited Plaintiff's sleep apnea symptoms because he was not "observed as fatigued," and the record contained "little mention of sleep . . . problems" or "the need for daily naps." AR 19. Again, the ALJ mischaracterized Plaintiff's medical records and testimony.

In 2017, Plaintiff experienced notable sleep issues, including an instance where he fell asleep while driving and hit a pole with his vehicle. AR 813. His sleep issues are well documented in numerous medical records. *See, e.g.*, AR 1765, 1775, 1785, 1807, 1812. Due to the severity of Plaintiff's sleep issues, he attended a sleep clinic in 2017 and was recommended a CPAP for his sleep apnea. AR 1780, 1796. Plaintiff's sleep issues persisted, AR 942 ("very little sleep" documented); 960 (sleep same as before, poor), and were so severe that he attended another sleep clinic in 2019. AR. 839. The Commissioner's reliance on a handful of medical records noting that Plaintiff's sleep was "a bit better" or improved with occasional CPAP usage, AR 868, 1546, 1530, are unavailing considering Plaintiff's significant sleep issues and notable fatigue. AR 734 (tired throughout the day), 777 (struggling with low energy), 868 (noting daytime fatigue). "[It] is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of

working." *Garrison*, 759 F.3d at 1017.

Viewing the records as a whole, as the ALJ must, Plaintiff's failure to report each symptom at each appointment does not undermine his testimony. *Trevizo v. Berryhill*, 862 F.3d 987, 1002 (9th Cir. 2017) ("The ALJ found [plaintiff's] claims of fatigue to be contradicted by the treatment notes because the notes 'generally show denials of fatigue.' Yet it is not inconsistent with disability that [plaintiff] was not entirely incapacitated by fatigue at all times, and the treatment notes reflect that plaintiff reported weakness or fatigue at more than half of her appointments[.]") (internal citation omitted). The ALJ also erred by deeming Plaintiff's testimony inconsistent because there was "little indication of the need for daily naps." AR 19; *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) ("[T]he ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.") (internal citation and quotations omitted).

### D.     The ALJ Erred in Finding Plaintiff's Daily Activities Inconsistent with the Medical Record

An ALJ may make an adverse credibility determination when a claimant engages in daily activities incompatible with alleged severe symptoms. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Disability claimants should not be penalized, however, for attempting to lead normal lives within their limitations. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1989) (a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits) (citation omitted). The ability to maintain some daily activities does not necessitate a negative credibility determination regarding work ability. *See Garrison*, 759 F.3d at 1016 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability

8

cases.") (citation omitted). "Only if the level of activity were inconsistent with claimant's claimed limitations would these activities have any bearing on claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ failed to explain how Plaintiff's daily activities, including shopping and "remember[ing] which churches served food on which days," are transferrable to a work setting. AR 19. It is unclear how these simple tasks, which Plaintiff could complete on his own accord and pace, are inconsistent with symptom statements regarding depression, anxiety, and ADHD. *Garrison*, 759 F.3d at 1016. The ALJ's reference to these daily activities is not a specific, clear, and convincing reason to discount Plaintiff's testimony because they are not inconsistent.

## V. THE ALJ ERRED BY FAILING TO CONSIDER PLAINTIFF'S SHOULDER IMPAIRMENT IN THE RFC ANALYSIS

The ALJ determined Plaintiff had the following severe impairments: depression, anxiety, attention deficit hyperactivity disorder, obesity, sleep apnea, knee disorder and pain, and status post total knee arthroplasty. AR 13. Plaintiff argues the ALJ failed to consider his shoulder injury in evaluating Plaintiff's severe impairments at step two of the sequential five step process. ECF 11 at 13. Plaintiff points to MRI scans, shoulder pain treatment, and decreased range of motion as evidence of this impairment. *Id.* at 14–15. The Commissioner contends that Plaintiff only complained about his shoulder in March 2018, so his medical records do not substantiate a severe impairment finding. ECF 12 at 8.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). A "severe" impairment significantly limits a claimant's ability to perform basic work activities for at least a consecutive twelve month period. 20 C.F.R. § 416.909. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "[A]n ALJ may find that

9

a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.* at 687 (quoting S.S.R. 85-28). So, a reviewing court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [claimant] did not have a medically severe impairment or combination of impairments." *Id.*

Plaintiff's medical records do not support severe shoulder impairment. Other than March 2018 MRI scans and physical therapy and corticosteroid injection trials, there is no indication that Plaintiff sought further shoulder pain treatment or that the impairment persisted. AR 970, 2084. Plaintiff's records continually note shoulder tendinitis as a prior diagnoses, but only in the context of Plaintiff being seen for unrelated ailments. AR 666 (presented with foot rash, shoulder issue noted in past medical history); 673–674 (presented with headache, shoulder tendinitis in history); 760–761 (appointment for chest pain, same history). While one medical record states that Plaintiff suffered ongoing pain for ten years, it is unclear what the level of pain was or how it impacted his ability to work. *Id.* at 981. Further, when asked about his physical limitations at the Social Security Administration hearing, Plaintiff only mentioned issues with his knees, and not his shoulders. *Id.* at 376. Plaintiff's own Disability Report does not list a shoulder impairment. AR 540. Given the records, the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Herrera v. Comm'r of Soc. Sec.*, No. 1:20-cv-01026-SAB, 2022 WL 1165830, at *11 (E.D. Cal. Apr. 20, 2022), *report and recommendation adopted sub nom. Herrera v. Berryhill*, No. 1:20-cv-01026-ADA-SAB, 2022 WL 3969544 (E.D. Cal. Aug. 31, 2022) (finding ALJ's non-severe carpel tunnel determination supported by substantial evidence where no medical records demonstrated ongoing treatment).

However, the ALJ erred in failing to consider Plaintiff's non-severe shoulder impairment in her RFC finding. An ALJ commits harmful error when she "does not consider all medically determinable impairments when assessing a claimant's RFC." *Bass v. Berryhill*, No. 18-cv-07053-DMR, 2020 WL 1531324, at *3 (N.D. Cal. Mar. 31, 2020) (citation omitted). Here, the ALJ's step two determination stated that she "considered all

of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." AR 14. However, the ALJ's RFC determination is notably silent as to Plaintiff's 2018 shoulder complaints so it is not clear if she actually *did* consider all medically determinable impairments in her assessment. AR 17–18. So, while the ALJ's decision to classify Plaintiff's shoulder injury as non-severe was harmless, her failure to discuss his shoulder impairment at all in determining the RFC was not. Accordingly, the Court remands to the ALJ to consider Plaintiff's non-severe shoulder impairment in her RFC analysis.

## VI. THE COURT REMANDS FOR FURTHER PROCEEDINGS

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand is appropriate here. The ALJ failed to provide adequate reasons for rejecting Plaintiff's testimony and did not develop the record as necessary in making her RFC determination. Consideration of Plaintiff's testimony and further record development will likely impact the RFC determination and what jobs best suit Plaintiff. *Garrison*, 759 F.3d at 1019 (social security cases should be remanded where "additional proceedings can remedy defects in the original administrative proceeding") (citations omitted). Accordingly, the Court remands the case for further proceedings.

## VII. CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's motion and remands the case for additional proceedings.

**IT IS SO ORDERED.**

Dated: April 16, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California